Paul J. **TILLMAN**, Plaintiff–Appellant,

v.

**RESOLUTION TRUST CORPORATION,** as Conservator for Standard Federal Savings Association, Defendant–Appellee,

and

**Standard Federal Savings Bank, F.S.B.; Stephen R. Best, Trustee, Defendants.**

No. 93–2536.

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1994.

Decided Aug. 24, 1994.

---

**ARGUED:** John F. Carroll, Law Offices of Jack Paul Leon, San Antonio, TX, for appellant. P. Matthew Sutko, Resolution Trust Corp., Washington, DC, for appellee. **ON BRIEF:** Jack Paul Leon, Law Offices of Jack P. Leon, San Antonio, TX; Abbe David Lowell, Brand & Lowell, Washington, DC, for appellant. Mark P. Hileman, Acting Asst. Gen. Counsel, Marilyn F. Drees, Resolution Trust Corporation; Jeffrey P. Bloom, Douglas E. Ginsburg, Metzger, Hollis, Gordon & Mortimer, Washington, DC, for appellee.

Before NIEMEYER, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Senior Judge PHILLIPS and Senior District Judge ERWIN joined.

## OPINION

NIEMEYER, Circuit Judge:

Paul J. Tillman filed this action in state court seeking to enjoin a foreclosure action brought by the federally-appointed trustees of a failed savings and loan institution against his house in Bexar County, Texas. The Resolution Trust Corporation ("RTC") substituted itself as the defendant, removed the case to federal court, and moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), arguing that under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (codified as amended in Title 12) ("FIRREA"), the district court lacked subject matter jurisdiction to hear the case. The district court agreed, and granted the motion to dismiss. This appeal followed, and we affirm.

### I

In June 1986, Tillman, who was the president and chairman of the board of CitySavings and Loan Association in Texas ("CitySavings"), purchased a house located on 400 Morningside Drive, San Antonio, Texas. The property was acquired with the proceeds of a loan from CitySavings in the amount of $1,025,000, secured by a Deed of Trust on the property. The note had a one year term, but was periodically extended by CitySavings, with the last extended maturity date at June 1, 1990. Tillman never made any payments on the note, and it is not disputed that he has been in default on the loan since June 1990.

On October 25, 1990, the Director of Office of Thrift Supervision, U.S. Department of Treasury, appointed RTC as receiver of CitySavings. That same day, the Office of Thrift Supervision chartered a new federal mutual savings association, known as "CitySavings and Loan Association, F.A." ("New City"), and appointed RTC as its conservator. The assets of CitySavings, including Tillman's note, and certain liabilities were transferred to New City pursuant to a purchase and assumption agreement.

By letter dated November 19, 1992, RTC notified Tillman of his default under the note. When, after five months, Tillman did not make any payments and the parties could not reach an agreement, RTC began foreclosure proceedings against the property under Texas Property Code. The substitute trustee under the deed of trust fixed the sale date for May 4, 1993, and so notified Tillman.

Tillman filed this action on May 3, 1993, one day before the scheduled sale, in the District Court of the 57th Judicial District of Bexar County, seeking a temporary restraining order against the substitute trustee and New City, and alleging damages in the amount of $1 million.* Tillman asserted as a defense to the foreclosure action that he had had an agreement with CitySavings, entered into prior to the appointment of the RTC as its receiver, under which CitySavings agreed to reimburse Tillman for legal fees incurred in connection with the defense of an unrelated lawsuit brought by Dwight Lieb. Tillman asserted that he incurred fees in excess of $1,000,000 in that action, that CitySavings never reimbursed him for the fees, and thus CitySavings' debt should offset the promissory note.

After the case was removed to the District of Maryland, the district court dismissed the complaint, holding that it is without jurisdiction to grant Tillman's motion for an injunction against the foreclosure and that Tillman's failure to exhaust his administrative remedies "works as a jurisdictional bar." From the order of dismissal, Tillman appealed.

### II

■ The district court's order dismissing a case on the grounds of lack of subject matter jurisdiction is a legal determination subject to *de novo* review. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768–69 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992).

---

* The temporary restraining order was granted by the state court. After the district court dismissed the case after removal, the RTC rescheduled the foreclosure sale for April 5, 1994. A Texas state court again issued a temporary restraining order in a separate action brought by Tillman, and, as of the time of oral argument, the foreclosure sale has yet to be rescheduled.

Tillman's argument in support of an injunction is essentially that his own indebtedness under the promissory note "has been paid as a result of [his] right of recoupment based on CitySavings Association's agreement to pay [his] legal fees in an unrelated case." In addition, Tillman argues that he is entitled to damages from New City for breach of an agreement that he had with CitySavings, which was transferred to New City under the purchase and assumption agreement, under which his promissory note would be extended and renewed on conditions agreed upon by CitySavings.

The RTC contends that federal courts are without jurisdiction to enjoin the foreclosure sale under FIRREA's anti-injunction provision, and that Tillman failed to present his claims to the receiver and exhaust the administrative remedies, as required by statute. Moreover, the RTC contends, Tillman waived his claims by not filing them within the statutory time period, also depriving the courts of subject matter jurisdiction.

FIRREA was enacted in 1989 as an emergency measure to enable the RTC and the Federal Deposit Insurance Corporation ("FDIC") to resolve and liquidate expeditiously the hundreds of failed financial institutions throughout the country. H.R.Rep. No. 101–54I, 101st Cong., 1st Sess. 291, 307, *reprinted in* 1989 U.S.C.C.A.N. 86, 103. Under the statutory scheme, Congress prohibited courts from enjoining the RTC or a receiver in any manner that affects the exercise of its powers. The anti-injunction provision states:

> Except as provided in this section, *no court may take any action*, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C. § 1821(j) (emphasis added). This Court has embraced the breadth of this provision in *In re Landmark Land Co.*, 973 F.2d 283 (4th Cir.1992), stating:

> The comprehensive scheme of FIRREA indicates Congress' intent to allow the RTC *full rein to exercise its statutory authority without injunctive restraints* im-

posed by bankruptcy courts or district courts in other proceedings.

*Id.* at 290 (emphasis added).

Moreover, Congress required persons making claims against a failed financial institution or seeking to adjudicate rights against them to present their claims first to the receiver for resolution. More specifically, under 12 U.S.C. § 1821(d), a claimant must present his claim to the receiver for an initial determination of whether the claim should be allowed within 90 days of the publication of notice by the receiver. 12 U.S.C. § 1821(d)(3). The receiver has 180 days after the claim is filed to determine whether to approve the claim. 12 U.S.C. § 1821(d)(5)(A)(i). After the receiver's initial decision, or if the receiver makes no decision within the 180–day period, a claimant may file a suit on the claim in one of two designated federal courts, within 60 days of the earlier of (a) the end of the 180–day period in which the receiver may determine the claim, or (b) the date of notice from the receiver that the claim has been disallowed. 12 U.S.C. § 1821(d)(6)(A). The receiver's final determination is subject to *de novo* judicial review. 12 U.S.C. § 1821(d)(7)(A). To protect and enforce this administrative process, the statute imposes the following limitation on judicial review:

> Except as otherwise provided in this subsection, *no court shall have jurisdiction over—*
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation ·as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).

In *Brady Development Co., Inc. v. RTC,* 14 F.3d 998 (4th Cir.1994), we construed the § 1821(d)(13)(D) limitation on judicial review in FIRREA as a jurisdictional bar. Holding that the "[e]xhaustion of administrative remedies is a requirement for efficiently administering the massive volume of claims," 14 F.3d at 1006, we stated, "[t]he orderly process Congress enacted would be threatened if ad-

ministrative remedies and judicial remedies were allowed to proceed simultaneously." *Id.* Reasoning that the elaborate administrative scheme established in 12 U.S.C. §§ 1821(d)(5)-(14) would be rendered meaningless through improvident judicial review because creditors would opt out of the administrative review, we held that a plaintiff's failure to exhaust the administrative process deprives the courts of subject matter jurisdiction.

The statutory scheme of FIRREA thus provides a dispute resolution structure that allows the RTC initially to collect assets, determine rights, and resolve claims before disputes over such matters can be heard in court.

With this background at hand, we now turn to Tillman's claims to see if the district court had jurisdiction to consider them.

### III

■ Tillman's arguments in favor of his injunction motion in no way provide a reason to bypass FIRREA's anti-injunction provision. It is abundantly clear that the RTC is authorized to pursue its foreclosure of Tillman's property and that the courts may not interfere by entering any injunction to halt the sale. 12 U.S.C. § 1821(j); *In re Landmark Land Co.,* 973 F.2d at 290. Thus, the district court properly dismissed Tillman's request for injunctive relief on the basis that it lacked subject matter jurisdiction.

■ As for Tillman's claims that the RTC breached an agreement to extend his promissory note, or failed to honor a reimbursement debt, or failed to afford recoupment, he was required to present those claims to the RTC in the first instance to exhaust his administrative remedies. Tillman's failure to do so precludes our exercising jurisdiction over these claims. We recently stated in *Brady Development Co.* that the administrative scheme provided in FIRREA is "an absolute and unwaivable jurisdictional requirement" for judicial review. 14 F.3d at 1007 (citations omitted). Other courts have taken a similar view. *See RTC v. Elman,* 949 F.2d 624, 627 (2d Cir.1991); *Althouse v. RTC,* 969 F.2d 1544, 1545–46 (3d Cir.1992); *Meliezer v. RTC,* 952 F.2d 879, 882–83 (5th Cir.1992).

■ Moreover, the failure to timely file the claims as required by 12 U.S.C. § 1821(d)(3)(B)(i) results in a waiver of the claim, unless the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date. 12 U.S.C. § 1821(d)(3)(C). Tillman asserts in his brief that he did not receive notice of the commencement of the administrative proceeding, a fact vigorously denied by the RTC, and that therefore he did not receive notice of the so-called "bar date" for filing his claims. He argues that a holding that his claims are waived, in light of the alleged lack of adequate notice, would violate his due process rights. We have allowed the record to be supplemented on this issue to determine whether this issue would have to be remanded, and have been provided with evidence of publication of the notice to CitySavings' creditors in the local newspapers. In light of such evidence, Tillman cannot sustain the argument that a lack of notice of the receivership provides him with a defense.

Accordingly, we affirm the district court's dismissal of the case for lack of subject matter jurisdiction.

*AFFIRMED.*