**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BEAZER EAST, INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.

UNITED STATES NAVY,
<u>Defendant-Appellee,</u>

and

AGRICO CHEMICAL COMPANY; AMOCO
CHEMICAL COMPANY; ASHLEY REALTY
COMPANY, INCORPORATED; BRASWELL
SHIPYARDS, INCORPORATED, now
known as Braswell Services Group,
Incorporated; ELLIOTT S. BRASWELL;

ELLIOTT S. BRASWELL, d/b/a
Neckland Associates; CHEVRON
U.S.A. INCORPORATED; CITY OF
CHARLESTON; COMMISSIONERS OF
PUBLIC WORKS OF THE CITY OF
CHARLESTON; CONOCO, INCORPORATED;
H. GEORGE DENT, JR.; DETYENS
SHIPYARDS, INCORPORATED; EXXON
CORPORATION; FEDSERV INDUSTRIES,
INCORPORATED; FINA OIL AND
CHEMICAL COMPANY; GENERAL
DIESEL, INCORPORATED; AMERADA
HESS CORPORATION; MARATHON OIL
COMPANY; MATLACK, INCORPORATED;

No. 96-1736

METAL TRADES, INC.; MOBIL
CHEMICAL COMPANY, INCORPORATED;
ROSS MARINE, INCORPORATED;
SOUTHERN DREDGING COMPANY,
INCORPORATED; TEXACO REFINING AND
MARKETING INCORPORATED; UNITED
STATES AIR FORCE; UNITED STATES
ARMY CORPS OF ENGINEERS; UNITED
STATES COAST GUARD; ARCADIAN
CORPORATION, formerly known as
Columbia Nitrogen Corporation;
MILES, INCORPORATED, formerly
known as Mobay Chemical
Corporation; CHEMICAL LEAMAN
TANK LINES, INC.,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt Jr., Senior District Judge.
(CA-93-1677-2-8)

Argued: January 27, 1997

Decided: April 11, 1997

Before HALL and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part and reversed and remanded in part with instructions
by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Robert E. Stepp, GLENN, MURPHY, GRAY & STEPP, L.L.P., Columbia, South Carolina, for Appellant. Peter Aaron Appel, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert C. Rhodes, GLENN, MURPHY, GRAY & STEPP, L.L.P., Columbia, South Carolina; Elizabeth H. Warner, BUIST, MOORE, SMYTHE & MCGEE, P.A., Charleston, South Carolina, for Appellant. Lois J. Schiffer, Assistant Attorney General, Ellen J. Durkee, Melaine A. Williams, Joel D. Armstrong, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Beazer East, Inc. (Beazer) appeals an order of the district court granting summary judgment in favor of the United States Navy (Navy) on Beazer's Comprehensive Environmental Response Compensation and Liability Act (CERCLA) and Resource Conservation and Recovery Act (RCRA) claims. See 42 U.S.C. § 9601 et seq.; 42 U.S.C. § 6901 et seq. We agree that Beazer's CERCLA claims are barred by res judicata and therefore affirm the dismissal of those claims. However, we conclude that the district court prematurely dismissed Beazer's RCRA claim with prejudice, and we therefore reverse and remand as to that claim with the instruction that it be dismissed without prejudice.

I.

This action arises out of the continuing cleanup of hazardous waste left over from a wood processing plant site in Charleston, South Caro-

3

lina. Beazer, then known as Koppers Company, operated the plant from 1930 to 1977 and sold it in 1978 to Braswell Shipyards, Inc. (Braswell). After the sale, sludge deposits and storage tanks containing hazardous substances were discovered throughout the 45 acres upon which the plant was located. In 1985 and again in 1987 the Environmental Protection Agency (EPA) issued CERCLA§ 106 orders to Beazer and others requiring cleanup of the site. Braswell discovered further hazardous substances in 1988 and incurred response costs in investigating and eliminating this waste. Seeking to recover for the damage caused by the waste, Braswell filed a CERCLA § 107 action, along with common law claims, against Beazer. See Braswell Shipyards, Inc. v. Beazer East, Inc. , No. 2:89-455-8 (D.S.C.). Beazer in turn filed a third-party complaint against the Navy and six other parties for cleanup costs, alleging that they were at least partially responsible. As it did against the other third-party defendants, Beazer filed two claims against the Navy: a claim for reimbursement of the costs alleged by Braswell and a claim for declaratory judgment under CERCLA § 113(g)(2) as to liability for future response costs in connection with the site.

While the Braswell case was still ongoing, Beazer entered into a consent order with the EPA which required Beazer to perform a Remedial Investigation and Feasibility Study on the site. After completing the study, Beazer initiated this present case in July 1993 against the Navy and twenty-seven other defendants seeking to recover costs of the study as well as future costs of remediation. Beazer then moved to consolidate this case with the Braswell case. The Navy, however, opposed consolidation on the grounds that it would unjustifiably delay Braswell. The district court denied consolidation. In May 1994 the Braswell case went to trial with Beazer continuing to press its CERCLA claims against the Navy and the other third-party defendants. After trial Braswell and Beazer reached a settlement of all claims between them, and Beazer moved to dismiss all of its third-party claims with prejudice. The motion was granted.

A month later the Navy moved in the present action for summary judgment on Beazer's claims on the grounds of res judicata. The Navy argued that the dismissal with prejudice of the third-party claims against it in Braswell precluded Beazer from pursuing the claims against it in this case. In a hearing the district court agreed that

4

the CERCLA claims should be dismissed with prejudice but stated that Beazer's RCRA claim would be dismissed without prejudice because Beazer had failed to comply with RCRA's notice requirements. However, in its subsequent order the court dismissed all of Beazer's claims against the Navy with prejudice. Final judgment was entered in favor of the Navy pursuant to Fed. R. Civ. P. 54(b), and Beazer appeals.

II.

The district court dismissed Beazer's CERCLA claims against the Navy based on res judicata. The court found that the claims raised against the Navy in this action were the same claims, or were part of the same transaction, as the claims raised against the Navy in Braswell. The court held that since the Braswell claims had been dismissed with prejudice, that judgment precluded Beazer from reviving those claims in this action.

Beazer does not contest on appeal that the claims raised in the Braswell action were part of the same underlying transaction as those raised in the current suit. Beazer does, however, make two arguments as to why res judicata should not apply. These arguments will be taken in turn.

A.

Beazer first argues that CERCLA § 113(g)(2) entitles it to pursue multiple actions for cost recovery under CERCLA§ 107. In order to prevail, Beazer must show that: (1) even though it is a potentially responsible party ("PRP"), it is allowed to pursue § 107 claims; (2) its claims in Braswell and in this case are both§ 107 claims; and (3) CERCLA allows for multiple § 107 actions as to liability for the same site. Because, as we discuss below, Beazer loses on the third prong, we will assume arguendo that Beazer could prevail on the first two prongs of its argument.**1**

_____

**1** We note, however, that the ability of PRPs to bring § 107 actions is the subject of considerable debate. Compare e.g. , Pneumo Abex Corp. v. Bessemer & Lake Erie R.R. Co., Inc., 921 F. Supp. 336, 347 (E.D. Va. 1996) (holding that PRPs may pursue § 107 actions), with United States v. Colorado & Eastern R.R. Co., 50 F.3d 1530, 1536 (10th Cir. 1995) (holding that PRPs are limited to contribution suits under CERCLA § 113(f)).

An action brought under CERCLA § 107, 42 U.S.C. § 9607, enables the plaintiff to recover costs incurred for the cleanup of hazardous substances. Beazer claims that CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), permits it to file a subsequent § 107 action even though its first § 107 action was dismissed with prejudice. Section 113(g)(2) states in relevant part:

> In any [§ 107 action], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section [107] of this title for further response costs at the vessel or facility may be maintained at any time during the response action . . . .

42 U.S.C. § 9613(g)(2). Focusing on the second sentence, Beazer argues that § 113(g)(2) explicitly allows for a "subsequent action . . . for further response costs." As the Navy points out, however, Beazer's interpretation ignores the first sentence of the quoted language, which requires that the court enter a declaratory judgment as to liability "that will be binding on any subsequent action." Thus, even if a party wants to pursue its response costs seriatim, the court in the first action must enter judgment as to liability for the site. See Kelley v. E.I. DuPont de Nemours & Co., 17 F.3d 836, 844 (6th Cir. 1994) (noting that under § 113(g)(2) "[t]he entry of declaratory judgment as to liability is mandatory"). It is only after this determination has been made that a party may file subsequent actions "for further response costs" as they arise. The purpose of § 113(g)(2) is, in fact, to require that the court's judgment in the first action have preclusive effect as to liability on all successive actions. See United States v. USX Corp., 68 F.3d 811, 819 n.17 (3d Cir. 1995) ("Essentially, § 113(g)(2) mandates collateral estoppel effect to a liability determination.").

Beazer cites Thomas v. FAG Bearings Corp., 50 F.3d 502, 505 n.10 (8th Cir. 1995), and United States v. Gurley, 43 F.3d 1188, 1196 (8th Cir. 1994), cert. denied, 116 S. Ct. 73 (1995), for the proposition that "CERCLA expressly permits successive actions based on the same wrong." Thomas, 50 F.3d at 505 n.10. This, however, is merely stating the obvious, since § 113(g)(2) clearly allows for actions for

6

"further costs." Neither case, however, discusses successive actions to redetermine liability. Beazer also argues that liability must necessarily be determined anew each time costs are considered, since subsequent costs may not have been caused by the same parties. If each action required a new liability determination, however, CERCLA's declaratory judgment provision would be meaningless. Section 113(g)(2) specifically provides for a "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action." As the Sixth Circuit said in Kelley , "[t]he fact that future costs are somewhat speculative is no bar to a present declaration of liability." Kelley, 17 F.3d at 844 (quotations omitted). Since Beazer's claim against the Navy for such a declaratory judgment in the Braswell action was dismissed with prejudice, Beazer cannot attempt to relitigate the issue.

B.

Beazer next argues that by opposing its motion to consolidate, the Navy in effect consented to the splitting of Beazer's claims.[2] This circuit has recognized that "consent, in express words or otherwise, to the splitting of the claim prevents the defendant from invoking claim preclusion." Young-Henderson v. Spartanburg Area Mental Health Ctr., 945 F.2d 770, 774 (4th Cir. 1991) (quotations omitted). In Young-Henderson the parties had entered into a consent decree that explicitly permitted the filing of other charges or claims. Id. at 772. In addition, acquiescence to the filing of two separate lawsuits has also been determined to constitute consent. The Restatement of Judgments, Second states:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's

_____

[2] Beazer wanted to consolidate the Braswell action, the current action, and a third action referred to as Dent v. Beazer East, Inc., No. 2:89-2851-8 (D.S.C.).

7

> claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26 cmt. a, at 235 (1982). <u>See also Calderon Rosado v. General Elec. Circuit Breakers, Inc.</u>, 805 F.2d 1085, 1087 (1st Cir. 1986) (holding that defendant's acknowledgement of plaintiff's decision to dismiss his state claim and pursue his federal claim barred defendant from raising res judicata against the federal claim).

Beazer argues that the Navy acquiesced in the splitting of Beazer's claim by opposing Beazer's motion to consolidate the cases. But a review of the papers filed in connection with the consolidation motion reveals that the Navy did not acquiesce or consent to the splitting of Beazer's claims.

The Navy opposed the motion to consolidate because it believed that, with regard to its own liability, the first action would take care of the second. In its Memorandum in Support of Motion to Dismiss, or in the Alternative to Stay this Action, and in Opposition to Plaintiff's Motion to Consolidate Actions, the Navy pointed out that "Beazer's legal claims against the Navy in this[second] action are, for all relevant purposes, identical to the claims it asserted against the Navy in the [Braswell] action." J.A. 107. The Navy noted that "[i]ndeed, Beazer itself acknowledges the identity of its claims in the two actions in its Motion to Consolidate." J.A. 108. <u>See</u> Beazer's Motion to Consolidate at J.A. 98 ("[T]he CERCLA claims pending in all of these actions arise out of a common nucleus of operative facts . . . ."). The Navy thus argued for the second action to be stayed, since "there is a very real possibility that rulings made in the [Braswell] and Dent actions will obviate some or all of Beazer's claims in this case, saving substantial resources on the part of the Court and the parties." J.A. 110.

These objections, while supporting a decision to stay the second action, would also seem to support a decision to consolidate. The Navy acknowledged this, but opposed consolidation due to the confusion and delay that consolidation could bring to the first trial. The <u>Braswell</u> action was four years old and was nearing completion when Beazer moved to consolidate. All discovery was finished. The Navy

8

believed that Beazer wanted to consolidate the actions in order "to make an unjustified `end run' around the scheduling guidelines" in Braswell. J.A. 106. In addition, the Braswell action was limited to CERCLA claims, as the common law claims had already been decided. The second action, however, involved "a variety of non-CERCLA common law claims against many of the non-Federal Defendants." J.A. 112.

The Navy had an entirely proper reason for opposing consolidation, and its opposition does not prevent it from asserting res judicata. For this conclusion, we are persuaded by the reasoning of Diversified Foods, Inc. v. First Nat'l Bank of Boston, 985 F.2d 27, 31 (1st Cir.), cert. denied, 113 S. Ct. 3001 (1993), where the court said:

> Courts could, we suppose, disallow the claim preclusion defense wherever two suits are brought and the defendant thereafter resists their consolidation. But when a plaintiff has chosen to bring two lawsuits in the same time frame relating to the same operative facts, it is hard to see why the defendant should not be able to resist consolidation on proper grounds, such as undue delay.

Because the Navy never implicitly or explicitly led Beazer to believe that the first action would not bar the second, we find that the Navy did not consent to the splitting of the claims. We therefore affirm the district court's dismissal of Beazer's CERCLA claims on the basis of res judicata.

III.

Beazer also appeals the dismissal of its RCRA claim against the Navy. Beazer brought its claim under RCRA § 7002, which provides that "any person may commence a civil action on his own behalf against any person" for RCRA violations or dangerous handling of hazardous wastes. 42 U.S.C. § 6972(a). In order to maintain such an action, however, RCRA requires the plaintiff to provide either 60 days or 90 days notice to the EPA and to "any alleged violator." 42 U.S.C. 6972(b). The Supreme Court, in Hallstrom v. Tillamook County, 493 U.S. 20, 33 (1989), held that "where a party suing under the citizen suit provisions of RCRA fails to meet the notice and 60-

9

day delay requirements of § 6972(b), the district court must dismiss the action as barred by the terms of the statute." Beazer notified the defendants of its claim on February 28, 1994, but then filed suit on March 23, providing only twenty-three days notice.

Beazer does not contest that it failed to provide the proper notice. However, it argues that its RCRA claim against the Navy should have been dismissed without prejudice. During a hearing on this issue, the district court initially indicated that it was "going to dismiss that [RCRA] claim as against all defendants without prejudice." However, in its written order, the court dismissed all the claims against the Navy with prejudice.

We believe that the district court should have dismissed Beazer's RCRA claim without prejudice. If a court does not have subject matter jurisdiction over a claim, it can only dismiss without prejudice; it cannot reach the merits. See Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379 (1981) ("A court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ."). We acknowledge that the Court in Hallstrom did not determine whether the notice provision was "jurisdictional in the strict sense of the term." Hallstrom, 493 U.S. at 31. However, the Court did give strong indications that the provision was to have the same effect as a jurisdictional bar. First, the Court stated that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing a suit under the RCRA citizen suit provision." Id.  Second, the Court quoted a concurrence by Justice Brennan which stated that "the requirement of exhaustion of state remedies was certainly a mandatory precondition to suit, and in that sense a `jurisdictional prerequisite.'" Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 137 (1981) (Brennan, J., concurring in judgment), quoted in Hallstrom, 493 U.S. at 31.[3] Finally, Hallstrom indicated that dismissal for failure to satisfy the notice provisions should not prejudice the plaintiffs' ability to file suit after they had complied with the provisions. See Hallstrom, 493 U.S. at 32 ("Nor will the dismissal of this action have the inequitable result of depriving petitioners of their right to a day

_____

**3** We have held the exhaustion of administrative remedies to be a jurisdictional requirement. See Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1036 (4th Cir. 1994).

10

in court. Petitioners remain free to give notice and file their suit in compliance with the statute . . . ." (citations and quotations omitted)). Since Beazer did not meet the RCRA notice requirements, the district court should not have reached the merits of the RCRA claim.**4**

IV.

For the above stated reasons, we affirm the dismissal with prejudice of Beazer's CERCLA claims against the Navy, and we reverse and remand as to Beazer's RCRA claim with the instruction that it be dismissed without prejudice.

AFFIRMED IN PART; REVERSED AND
REMANDED IN PART WITH INSTRUCTIONS

_____

**4** The Navy argues that, the notice issue notwithstanding, res judicata bars Beazer from asserting RCRA claims it should have brought in the prior litigation. If Beazer, after providing the proper notice, brings a RCRA action, the Navy would of course be free to reassert res judicata as a defense.